received a 30-year sentence for a non-violent drug offense under the pre-Booker guidelines. He has served all but two and a half years of that sentence while compiling an excellent record in the Bureau of Prisons. It is now undisputed that his guidelines range would be a minimum of 150 months lower today than it was at sentencing. We are asking this Court to vacate the District Court's denial of compassionate release and to remand the instructions either to grant a reduced sentence as the Court did in the case to a different judge for further proceedings. I want to begin with the recent decision in the Davis case because I think it highlights the nature of the legal error in the District Court's analysis here. In particular, if you look at page 20 of the slip opinion in Davis, the Court establishes that for a drug case like this one, we consider the sentencing disparity giving the defendant the benefit of Amendment 782. The District Court did not do that. And I want to highlight this because I apologize, it's a point I don't think I made clearly enough in the briefing. And that is if you go to Joint Appendix page 159 and you look at footnote 12, the key portion of the District Court's analysis where he relies on the criminal history as the basis for a variance or a departure upward. He says this would only be a three-level departure to get to the same range that applied at sentencing. That three-level analysis is based on the pre-782 guidelines range. In other words, it is based on the guidelines range using the drug weight from 2003, not the drug weight table from now, from 2024. That is an error under this Court's decision in Davis, which tells us that the analysis in this case, both at the threshold eligibility stage and at the 3553A analysis, must use the post-782 range. That's because we're talking about the disparity between the sentencing range that existed at the time and the sentencing range that applies today. Was the District Court made aware of that? It was. I mean, it was not made aware of Davis, of course, because Davis came out a couple of weeks ago. But we certainly argued that the 782 range should apply. The District Court judge disagreed, and if you look at Joint Appendix 157, the Court viewed our 782 argument as effectively a challenge to the denial of 782 relief and viewed it as being barred by this Court's decision in Ferguson. We argued to the contrary, but the District Court started its analysis at footnote 12 as it explains a three-level variance, three-level departure. But was it, Mr. Carpenter, that the District Court might have overlooked? Because so often these cases come up and they say, well, the District Court didn't consider this or what have you. But in this case, as I understand it, the District Court, when it got to the stage of 3553 factors, talked about the defendant's advanced age, he talked about the time it was already served, he talked about the clean disciplinary record. So it's, so many of these things come up and they say, well, the District Court didn't address this. But here, the District Court explicitly made reference to the factors that you would legitimately advance in your client's behalf. He said, I've considered them, I just don't find them persuasive. And given the discretionary character of compassionate release, how do we overturn that? So I think there are two flaws that should cause you to overturn it here. And the first is the one that I laid out, which is procedurally the analysis just has to start from the right place. And here it didn't. The judge was primarily considering a disparity in the pre-782 range, which is a smaller disparity than the one post-782. And again, footnote 12 makes this clear. He's saying a three-level variance would get us to the same place. Based on his criminal history, I think it's likely he would get there. But didn't he also say that even if we assumed the extent of the variance, the drop that you would have suggested, that he still didn't think it would have been significant enough to warrant relief? He said that at the threshold piece of the analysis, acknowledging, well, under the defendant's calculations, it would be 150-month change. But then when he's going through the variance departure analysis, which is the critical piece of his analysis, he goes back to the pre-782 range. And he does that because he's already expressed his view that our reliance on 782 is improper because it's a challenge, in his words, to the denial of 782 relief. So we think that's procedurally the error under Davis, which is when you are running this analysis under the Compassionate Relief Statute, you're talking about a disparity between the time of sentencing guidelines and the time of today's guidelines. You have to consider the disparity under 782. We think that the key portion of his analysis was relying on the wrong range. How are we to take the district court's statement, then, that even if your range was correct, the result wouldn't be any different? Haven't we often affirmed a district court when it makes that statement, albeit in a different context? Even if I've made an error in calculating the sentencing range, my sentence would have been the same, and we often affirm. So I acknowledge you do often affirm with some similar language. I don't think that's appropriate here because I think that principle can go too far, right? A judge can just slap in a footnote that says, even if I made a mistake, the outcome would still be the same. And the result of that, if it's actually credited, is to evade meaningful appellate review of all of the subsidiary issues that go into it. I think it's particularly improper to rely on it here because of how important the variance departure analysis is and where you're starting. Because if you start and do a three-level departure- It seems that he did take the disparity into account, and he got the right disparity. And then he says the reason that that's not persuasive here is because he would have received a substantial sentence whether the career offender designation applied or whether it was not. And then he said, given the extensive criminal history record, it probably understated the true dimensions of his crime. And he said, had he been sentenced under the guidelines as they apply today, he still would have received a substantial sentence because the government, given the criminal history, would have moved for a 4A1.3, given the fact that the criminal history understated exactly what he had done. And then the district court emphasizes that this trail of criminality extended over three decades. It wasn't just one month, and then he repented, or there's no question he abandoned it. You've got a three-decade record of producing these illicit substances. So the district court looked at an awful lot of things and explained an awful lot of things. And he said at the bottom line, this is why I'm doing what I am doing. And how do we say that's an abuse of discretion? When you affirm for no abuse of discretion, that's what the standard of review leads you to. But when you reverse a district court for abuse of discretion under these circumstances, we would have this case thrown up to us for the next 20 years. And so you have to be careful and make sure that if you reverse for abuse of discretion, the district court did something very wrong. So I think, Your Honor, there's both a procedural and a substantive component to what we're asking here. But I want to start with the procedural one. I think you're certainly correct. The criminal history was what the district court relied on in this case. But what this court has said procedurally in cases like Brown is that when there are mitigating arguments that contradict the reasoning of the departure, the court has to explain why it's rejecting them. That's what the district court failed to do here. He said all of the things about the criminal history that were bad. And I would note- Were any of them inaccurate? Well, they were not necessarily inaccurate. They were incomplete. Because he wasn't responding to the mitigating components. They weren't inaccurate? They were not inaccurate. If you compare what the district court did at Joint Appendix 159 with what my friend, Ms. Ray, argued at Joint Appendix 125- They were complete. They were not incomplete. The argument- They were incomplete. He did not consider- Okay. You say they were incomplete. Let's say why I don't particularly agree with that. Well, can I tell you why they were incomplete first? You're terrific, Mr. Cox. So, the reason they were incomplete- May I tell you why- Okay, go first. May I tell you why I think it was complete? Sure. Because he recognized the disparity. He got the amount of the disparity right. He says it's not persuasive because he would have received that kind of- He would have received a steep sentence at the time, irrespective of the defender designation, that had there been any problem with it, the extensive nature of the criminal record would have resulted in a substantial sentence and then a forward 4A1.3 motion. Then, when it came down to the Compassionate Release Program, he doesn't ignore you. He says, look, he's got an advanced age, although to me 69 doesn't seem so advanced, but he says he's made efforts at rehabilitation. He's got a good disciplinary record. It wasn't that the district court tried to duck what you were saying. Now, why is that incomplete? So, I think there are several things that he did duck, and I want to try to highlight those for you. So, first, the premise of this whole argument is he would receive an upward variance or departure today. I think it's critical in analyzing that contention to recognize that in fiscal year 2023, 96.5% of defendants, according to Sentencing Commission statistics, received a sentence within or below the guidelines range. Only 0.5% received any kind of upward departure. Only 3% received an upward variance. I do not think the analysis that the judge provided is sufficient to tell us why he believes this defendant is in that 3.5%, and there are things that I think he ducks. So, for example, one of our primary contentions throughout was that in all of his prior history, was relatively non-serious offenses. He did not acknowledge that under current law, none of his prior offenses qualify as either crimes of violence or controlled substances offences under the career offender predicate. He only relied on the Norman decision as striking out the instant offense. So, that taints his review of the criminal history because he believes that he would be a career offender but for Norman and the instant offense. Well, I mean, this case had been with him throughout, and you're talking about the assault offenses, right? Go ahead, what were you going to say? This was with Judge Thornburg, to be clear beforehand. But with respect to the assault convictions, as I think is what you're getting at, didn't the district court acknowledge in the previous resentencing that those were no longer predicate offenses? It's possible, I don't recall that. I did, I certainly know it is not in this order, and there may have been a prior order where he didn't, where he did acknowledge it, but it was not acknowledged here in response to our... So, you think he would have had to acknowledge it here in any event? Yeah, our view is that he had to acknowledge it here because our contention is this criminal history, even though there are 21 points, is not nearly as serious as the 21 points by them in isolation would lead you to believe. And if you look at Commentary Note 2 to 4A1.3, the departure provision, the Sentencing Commission says when you're in criminal history Category 6 and you're considering an upward departure, you want to look at the nature of the offenses rather than just the number. And I think that's what the court failed to do here. It relied on this 21 points without recognizing that of the... that led to those 21 points. 10 of those convictions were minor one-point offenses for things like driving without a license, or petty theft, or shoplifting. Those are non-serious offenses. Our core argument is that the 21 points over states it. And so when the district court said, well, there were even some unscored offenses, including a breaking and entering. But what the court didn't acknowledge, the court's saying this in 2023, that V&E, the most recent V&E was 1977. It was 26 years before the sentencing in this case, 40 plus years before the court's analysis. And this court's precedent, I think Supreme Court precedent, is clear that in this context, you consider the 3553A factors at the time. You don't go back to sentencing. And he has 20 plus years of great conduct in the BOP that offsets. And that's, I see that I'm out of time, I would like to highlight, that's the problem under this court's decision in Brown. There, like here, the court acknowledged, oh, you've done great service while you're in prison, but it did not weigh how those efforts outweighed or ameliorated the risk posed to Brown's community upon his release. That's what the district court failed to do here, is to weigh why his 20 years of great conduct didn't offset a criminal history that we think is overstated. But that's what district courts do, is they assign weight. Certainly, but they- If there's one thing that characterizes a district court's job, it is to assign weight to this or that particular factor. But they can also err in a weighing analysis. And I would point this court both to the Brown decision and the Malone decision. In both of those situations, the courts weighed the 3553A factors, said no matter what, if we committed an error, it would, we would get to the same outcome and we would deny relief no matter what. This court in both of those cases said, look, when we look at the 3553A factors, they overwhelmingly favor a sentence reduction. And this court reversed for that reason. We think this court, this case is one likewise, where the 3553A factors overwhelmingly weigh in support of a sentence reduction. And we would ask the court to do what it did in Brown and Malone, and to direct that reduction be granted on remand. All right, thank you, Mr. Carpenter. Ms. Ray? Thank you, Your Honors. May it please the court, Amy Ray for the United States. I will just begin with the point that Mr. Carpenter began with in terms of whether or not the district court, I mean, it's the first time I've really heard this argument that the district court in its opinion made a mistake when it referenced the three-level upper departure would get me to the same sentence essentially that was applied earlier. The district court did not make a mistake on that. Applying Amendment 782, you get to a total offense level of 32 and a criminal history category of six. And I think that's the same calculus that Mr. Carpenter would arrive at, 32 and six under 782. To go up three levels gets you to a guideline range that includes 360 months. So it doesn't get you to 360 to life, but it gets you to the possibility of the same sentence within the guideline range because 35 and six gets you up to, I can't remember, I think it's 324 to 364, something like that. So there wasn't a major error, but even if there were, even if the district court had made a mistake on that point, the district court acted well within its discretion when it found that Mr. Moody had not shown an extraordinary and compelling circumstance warranting compassionate release because the district court considered not only the difference between the guideline range that applied when he was sentenced and that which would apply today, but the court also considered what the sentence would be. I'm interested in these cases as to how far the appellate authority extends. I assume we've done, we could remand and just theoretically and say to a district judge, I want you to consider this because this was an argument that was made and you didn't consider, you didn't give it any consideration. But I don't think I've seen many cases at all in which the appellate court has remanded with directions to grant compassionate release. Given the discretionary nature of the remedy, I wonder really if we have the authority to do that, to remand not for procedural fairness, but for a step beyond that and saying grant compassionate release. I'm not sure that applies to this case because I've indicated that this was done for myself at least that this was thorough and complete, but assuming that it wasn't, I'm just interested in your views to whether the appellate court has the authority to direct release or does that go beyond what the statute gives us? Judge Wilkinson, before this court's decision in Brown, I would have said this court could not do that. In Brown, it did. And what the court did in Brown was say, and not only say that the district court had abused its discretion in the procedure, but it actually remanded with directions that the court grant compassionate release and reduce the sentence by 20 years. Okay, are we an outlier on that? Absolutely, but let me just... How many other courts have taken that view? I don't know of any. And unfortunately, the government didn't get authority to appeal that. Now, but here's the thing, let me... I'm just concerned about our statutory authority here. Sure, I mean, look, if the court... I would strongly suggest that this court find a way to reconsider Brown and the way that the court went so far in that case. Is there any other court, any other appellate court in the country that has directed release rather than the consideration of an argument? Not that I am aware of, but I will say that I did not, in preparation for this argument, try to do a canvas of those courts. But to me, it was an extraordinary decision. But I want to explain quickly, I guess, why Brown doesn't really help... Were you in that case? Mr. Moody, no. I'm not sure... Was Josh in that case? I certainly don't know. It wasn't our district. And I certainly don't think that I... I'm not suggesting I could have gotten a different result at all. In fact, I don't think I could have. But Brown is not this case. Mr. Brown was not Moody. The district court in Brown, first of all, Brown had received staff 924-6 sentences. And so those are the cases similar under McCoy where it's very easy to say, oh, he wouldn't have gotten 35 years for 924-C. He would have gotten 20 years less, which would have been, I guess, 15 years in that case. But also, the district court in Brown, twice refused to consider or declined to consider the disparity between, based on legal developments, basically the McCoy issue. The court did not consider the disparity between the sentence that he received at the time and the sentence he would receive today. Judge Reininger, in this case, did exactly that. He considered exactly what McCoy says. I want to say this. McCoy basically makes three observations that I think are important for this court to consider. The first one is the standard for compassionate release is exceptionally high. This is an extraordinary remedy. It's exceptionally high. The second thing the McCoy standard, the McCoy court recognized was that a court may find, based on- That's discretionary, too. That's right. Discretion all along the line. Absolutely. The first part of discretion is whether you recognize it as an extraordinary and compelling circumstance. You certainly can recognize the disparity as that, but you're not mandated. And the only point I'm trying to make is that this statute is characterized by discretion not only at one juncture, but at multiple junctures. That's right, Your Honor. And what McCoy said was that a court is authorized. It could consider the legal developments, even those which are non-retroactive, and find that because of the disparity in sentencing that would result, that that would constitute an extraordinary and compelling circumstance. But it's not compelled to find that. And then the third thing that the McCoy court recognized was you don't just look at the guideline disparity. You look at the sentence the defendant would actually receive. And Judge Reidinger exercised reasonably his broad discretion in saying this defendant would have received a sentence that was not that much different. Because it only would have required a three-level upward variance or upward departure. But even more to the point, he didn't have to get even close to that to say that it wasn't a disparity that was so profound that the court was compelled to grant compassionate release. Even 150-month disparity, no court has said that a court is compelled in that situation to grant release. In this case, he looked at his criminal history, which was violent. And in the previous order, he had recognized, he said he recognized that the defendant's argument was that his prior offenses weren't crimes of violence. And that then he wouldn't be considered a career offender. That was the premise of everything. He wouldn't be sentenced as a career offender today. That doesn't render two assaults that resulted in a serious injury actually nonviolent. It just means that under the categorical approach, it technically wouldn't count for a predicate offense for the career offender guideline. But Judge Reidinger reasonably considered a 30-year, almost unbroken history of offenses. He was sentenced to 10 years in prison for breaking and entering earlier. That didn't count into the 21 criminal history points. So all of that was reasonable. And I note that in assessing both the extraordinary and compelling circumstance inquiry, and then looking at 3553A factors, the court considered all kinds of factors, including his age, including the nature and circumstances of his offense, including the efforts at rehabilitation. And I do want to address briefly Mr. Carpenter's suggestion that the district court was required to dive into the rehabilitative efforts. What this court stated in Davis, and really has recognized since its decision in Martin and then in High, and over and over again, the court has used a phrase, when a defendant presents a mountain of evidence of rehabilitation, this was what happened in Martin, then the district court is compelled to grapple with that. And just at least explain why that evidence of rehabilitation doesn't carry more weight than perhaps the district court gave it, or would have given it. And this court, this case does not include a mountain of rehabilitative evidence. It includes a single email from the probation officer that gives the courses that Mr. Moody has taken, and it includes a letter from a friend that says he could live here, he could live with me. It does not include. And so if your honors would look at Davis, where Judge Gregory really looks and explains, on one hand you've got Martin, mountain of evidence. On the other hand, you've got this court's decision in High, where we basically said, nah, as long as they've considered and said something about rehabilitation, that's enough. And then in Davis, the court said, we're closer to Martin, and we're certainly in the middle, we're not in High. Moody is at High. Moody is on that range of the spectrum where he did not present a mountain of evidence. Has he done well in prison? He's done reasonably well. And the court considered that and said, his conduct in prison has been commendable. That's all the district court needed to say about that. I want to address one last thing. Mr. Carpenter, in his brief, faults the district court for not considering, in the context of the 3553A analysis, the fact that the guidelines were mandatory when Mr. Moody was sentenced. But in the district court, he never made the argument in the context of the 3553A factors that the mandatory nature of the guidelines had any relevance in that analysis. And it shouldn't. Not when you get to the 3553A factors. So he didn't make that argument in the district court, which might explain why the district court did not address that in the context of that particular part of its analysis. Your Honors, the district court applied the appropriate law and it reached a reasonable result. Certainly not one that this court should argue, or should suggest, was compelled to go the other way. If there are no further questions, the government requests that... Before you sit down, I wanted to make clear when I asked you earlier about whether we possess the statutory authority to demand with directions to dismiss. And you indicated that we were the only court in the country, to your knowledge, that had assumed that authority. I should respond to you that even if we were the only court, and even if we are the only court in the country to recognize this authority, every judge on the court will follow it. We expect every litigant on the court to follow it too. I raise the question purely for purposes of future thought and contemplation. But I would not suggest that anybody take liberty with a decision of the court, no matter how lonely it appears to be. You understand that? I certainly do, which is why I immediately had to acknowledge that under Brown, this court has not only said that the district court erred, but also declined to remand, to allow the district court to exercise its authority, and instead remanded with instructions. I believe that this court, my own opinion, I was surprised by that decision. I do think it was extraordinary. But this panel is bound by that decision. But that said, the only thing this panel's really bound by is that the possibility exists. We're not really faced with that problem here. No. The thing about the compassionate release decisions, and I think this is important when considering the kind of advocacy that we see from defendants and Mr. Carpenter's advocacy. They'll list a dozen cases in which district courts have granted relief based on the career offender disparity. But every single fake case is different. And so it's really the prior decisions don't have a whole lot to do with whether or not the district court erred unless they applied the wrong analysis or somehow went outside the bounds of its discretion. And so you can find courts all over the country that have found 150 months enough. And you can find courts that have found 150-month disparity is not sufficient to be extraordinary and compelling. That may be a fault with the system, but that is the law. And so offering this court Brown or various other decisions is only useful in the legal principles that were applied. And the legal principles that were applied, the district court in this case adhered to every one faithfully. Is there any argument that with respect to compassionate release, there still is some obligation to relative uniformity when it comes to relief or not? I don't, you know, Your Honor, it would be very difficult to imagine that kind of assessment because of the number of cases that there are and the different facts that apply in each one. When I say that someone found 150-month disparity sufficient or not, that may also depend on what was the extent, what was the seriousness of the criminal history? You would have to go into every kind of different fact. What were the release plans? Well, you just made a point that I think Judge Carpenter, almost demoted to Mr. Carpenter, Judge Carpenter. He makes that point, doesn't he? He says that district court didn't engage with the seriousness of this defendant's criminal history other than noting the number of convictions. Right, well, I think that that's not fair to the district court because, in fact, the court did engage with the seriousness of his criminal history and found that it was very serious and that he had crimes of violence and breaking and entering, three breaking and entering offenses that did not amount to anything in his criminal history calculation because they didn't count, they were too old. And the district court, of course, as Your Honors are well aware, only has to consider the arguments. It does not have to grapple in its order with every single argument the defendant makes. So the fact that the district court explicitly addressed the criminal history is sufficient. District court doesn't have to go through every single, thank goodness, every single prior conviction and decide whether or not that way is in favor of or against compassionate release. So I think the more important point is that every single one of these cases comes down to a million different factors. What was the person's history? What was the nature and circumstances of their offense? What's their release plan? What's their medical condition? What's their age, a time of offense, and now? How much longer do they have to serve? How much time has been served? Judge Ridinger, in this case, considered a remarkable number of those factors at both the extraordinary and compelling analysis part of the conversation and at the 3553A part of the conversation. If a district judge does that, this court has asked no more of it and shouldn't ask any more of it. The United States, if there are no further questions, respectfully request that this court affirm the judgment of the district court. All right. Thank you, Ms. Ray. Thank you. Mr. Carpenter. Thank you, Your Honor. Just a few points in rebuttal, starting with the Guidelines 782 issue. I acknowledge what Ms. Ray says, but that's not what the district court's footnote said. The district court didn't say three levels gets us to a range that includes 360 months. It said in footnote 12, three levels gets us to, quote, the same sentencing range as Judge Thornburgh applied. That makes clear that the court in doing this analysis was moving from level 34, which is 262 to 327, up to level 37, which is 360 to life. So that's why our contention is he started at the wrong place. Judge Diaz, I want to talk for a second about your question about relative uniformity. I do think it is important for there to be some degree of standards as to what is an extraordinary and compelling circumstance. I do think at some level, a disparity is going to be large enough that the court should say, this disparity is so big that it's extraordinary and compelling. Obviously, there will be a 3553A analysis beyond that in every case. We get that. But I do think at some point, and this is an awfully large disparity, and the government, I'm not aware of too many cases out there that have said 150 months is, you know, jump change. It's pretty big. I think it has to turn in a case like this on the 3553A analysis, and we think that's where the district court's analysis fell short. And I do want to highlight your question about, you know, our point, as you said, is that the court is required to engage with this criminal history and not to merely, you know, rely on the number. And I just, I guess we read the opinion differently, but I just don't think the court really engaged. And the reason I say that is if you compare Joint Appendix page 159, which is the district court's order on the criminal history, with Joint Appendix page 125, which is Ms. Ray's well-done sentencing memo opposing, it is cut and paste. There are word after word that is exactly the same thing. And the fact that the district court cut and pasted, Ms. Ray is a terrific advocate, very persuasive, but the fact that the district court cut and pasted her analysis should not give this court very much confidence that the district court truly engaged with these arguments. And I think that is relevant when you're looking at what the court does here. Cutting and pasting is not what we aspire to in our judicial system. The next point I want to make is about rehabilitation. Judge, Ms. Ray, I almost ruined her there. Ms. Ray compared this case to High, where the court rejected the rehabilitation evidence. There's a huge difference, in my view, between this case and the High case. In High, the defendant... You said, Mr. Carpenter, earlier that the district court didn't truly engage. That's a sort of a subjective impression that you had. And are we supposed to put ourselves in the mind of the district court and decide whether they engaged or not? What we have to go by is the written record and the transcript, which indicates a recognition and a cognizance of arguments which it was entirely legitimate for defense counsel to bring up. But the question of truly engagement makes me a little nervous because it gets me close to the position of being a mind reader. And I'd rather just take the fact that the district court... I'd rather just stick with the record. And the fact that the district court ticked off these arguments that you had made and found why he did not find them persuasive. Now, to me, that's objective engagement. And whether there's some sort of subjective engagement or not that I could read into that, I do not know. That seems to me to ask us something that is more objective in nature. Your Honor, I think this court's precedent requires a subjective type of analysis. I mean, I know it would be much easier for everyone, me included, if it was an objective, robotic, black and white thing. But there is a lot of gray area when you're considering this court's precedent, which says the district court must consider the arguments and provide a reasoned basis. What is reasoned or not reasoned? What is a sufficient basis or not a sufficient basis under the compassionate release case law and the procedural error case law in the ordinary sentencing context? There's just a lot of gray area there, and the court has to review it in every case. So I think some degree of subjectivity is always going to be there. Returning quickly to the high point, the big difference between that case, the defendant there had been in prison for 16 months. Here, we have 20 plus years of excellent conduct. So I think that pushes this case closer to the Martin types of cases. And the final point, Judge Wilkinson, on your question about statutory authority, as Ms. Wray acknowledged, the court did do that in Brown. The court also did that in the Malone case, which preceded Brown. It was 57 F. 4th, 167 is that case. It weighed the 3553A factors in that case as clearly favoring release, overturning a district court who had said that in no circumstances would the 3553A analysis support relief. So regardless of anything else, this court's precedent does require it to consider those factors. We would ask you to do that in this case. And then if you want to take it en banc to consider statutory authority, I'm sure Ms. Wray and I would be happy to see you there. And if there are no further questions, thank you for your time. All right, thank you both for your fine arguments. We'll come down, recounsel, and take a short recess before moving on to our last two cases.
judges: Albert Diaz, J. Harvie Wilkinson III, Robert B. King